BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN (Cal. Bar No. 300847)
ALEXANDER L. FARRELL (Cal. Bar No. 335008)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-0805 / -5557
    Email: Paul.Green@usdoj.gov
        Alexander.Farrell@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STUDENT DOES #4, *et al.*,<br><br>       Plaintiffs,<br><br>       v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>       Defendants. | No. 2:25-cv-03528-MCS-JPR<br><br>**DEFENDANTS' OPPOSITION TO STUDENT DOES #4-19'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>Honorable Mark C. Scarsi<br>United States District Judge |

# TABLE OF CONTENTS

DESCRIPTION                                                                      PAGE

**Contents**

TABLE OF AUTHORITIES ....................................................................................ii

I.      INTRODUCTION ......................................................................................... 1

II.     PLAINTIFFS' COLLECTIVE CLAIMS ...................................................... 3

III.    PROCEDURAL HISTORY ........................................................................... 4

IV.     ARGUMENT.................................................................................................. 4

        A.      Plaintiff Fails to Establish Entitlement to Extraordinary *Ex Parte* Relief.................................................................................................... 4

        B.      Plaintiffs' *Ex Parte* Application Fails to Establish Entitlement to Their Requested TRO Relief ............................................................... 5

                1.      Plaintiffs Have Not Established a Likelihood of Success on the Merits .................................................................................... 6

                2.      Plaintiffs Fail to Establish Likely Irreparable Injury .............. 9

                3.      Public Interest Factors Weigh in Favor of the Government.......... 11

        C.      Plaintiffs' Mass Action Is an Improper Joinder of Parties..................... 12

        D.      The Broad Variety of Relief that Plaintiff Seeks by *Ex Parte* TRO Application Is Unjustified, and Far Exceeds the Relief Requested or Obtainable by Plaintiffs' Complaint ..................................................... 13

        E.      Plaintiffs Have Not Satisfied Their Burden to Proceed Anonymously ..... 15

        F.      A Bond Is Required Under Fed. R. Civ. P. 65(c)................................. 18

V.      CONCLUSION .......................................................................................... 19

i

# TABLE OF AUTHORITIES

DESCRIPTION                                                                          PAGE

**Cases**

*Am. Trucking Ass'ns v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009)...............................................................9

*Bakhtiari v. Beyer*,
  2008 WL 3200820 (E.D. Mo. Aug. 6, 2008) .....................................8

*Bennett v. Spear*,
  520 U.S. 154 (1997) .............................................................................6

*Blackie's House of Beef, Inc. v. Castillo*,
  659 F.2d 1211 (D.C. Cir. 1981)..........................................................12

*Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*,
  149 F.3d 971 (9th Cir. 1998)................................................................8

*Calderon Salinas v. U.S. Atty. Gen.*,
  140 F. App'x 868 (11th Cir. 2005)......................................................9

*Coughlin v. Rogers*,
  130 F.3d 1348 (9th Cir. 1997).....................................................12, 13

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*,
  596 F.3d 1036 (9th Cir. 2010) ....................................................16, 17

*Doe v. Pasadena Unified Sch. Dist.*,
  2018 WL 6137586 (C.D. Cal. Feb. 20, 2018) .................................16

*Doe v. Rostker*,
  89 F.R.D. 158 (N.D. Cal. 1981)..........................................................16

*Doe v. Snyder*,
  28 F.4th 103 (9th Cir. 2022) ................................................................6

*El Resc*,
  ate Legal Servs., Inc. v. Exec. Office of Immigr. Review, 959 F.2d 742 (9th Cir. 1992)
  ........................................................................................................11

*Fan v. Brewer*,
  2009 WL 1743824 (S.D. Tex. June 17, 2009)....................................8

*Flagship Lake Cty. Dev. No. 5, Ltd. Liab. Co. v. City of Mascotte*,
  2013 WL 1774944 (M.D. Fla. Apr. 25, 2013) ...................................9

*Gannett Co. v. DePasquale*,
  443 U.S. 368 (1979) ...........................................................................16

*Jie Fang*,
  935 F.3d n.100...............................................................................7, 8

*Kamakana v. City of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006)............................................................16

*Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*,
  286 F.3d 382 (6th Cir. 2002)................................................................7

*League of Cal. Cities v. Fed. Commc'ns Comm'n*,
  118 F.4th 995 (9th Cir. 2024)..................................................................7
*Louhghalam v. Trump*,
  230 F. Supp. 3d 26 (D. Mass. 2017)........................................................9
*Lydo Enters., Inc. v. City of Las Vegas*,
  745 F.2d 1211 (9th Cir. 1984)...............................................................11
*Marlyn Nutraceuticals v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009)..................................................................13
*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
  883 F. Supp. 488 (C.D. Cal. 1995)...........................................................4
*Munaf v. Geren*,
  553 U.S. 674 (2008) ................................................................................5
*Nken v. Holder*,
  556 U.S. 418 (2009) .........................................................................9, 11
*Nunez v. City of Los Angeles*,
  147 F.3d 867 (9th Cir. 1998)...................................................................8
*Rosen v. NLRB*,
  1983 WL 21389 (D.D.C. Jan. 27, 1983) ................................................9
*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001)...................................................................5
*U.S. Dep't of Homeland Sec.*,
  2020 WL 6826200 n.3 (C.D. Cal. Nov. 20, 2020) ................................8
*Univ. of Tex. v. Camenisch*,
  451 U.S. 390 (1981) ..............................................................................13
*Visendi v. Bank of Am., N.A.*,
  733 F.3d 863 (9th Cir. 2013)..................................................................13
*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)........................................................................5, 9, 11
*XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000)...............................................................16
*Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*,
  2018 WL 5018487 (W.D. Va. Oct. 16, 2018) ........................................8

**Statutes**

5 U.S.C. § 704.............................................................................................6
5 U.S.C. § 706.............................................................................................7
8 U.S.C. § 1201(i).......................................................................................7
8 U.S.C. § 1229(a)(1)..................................................................................6
8 U.S.C. § 1252(a)(1)..................................................................................6

**Rules**

Fed. R. Civ. P. 5.2(c) ............................................................................................. 16

Fed. R. Civ. P. 10(a) ............................................................................................. 16

Fed. R. Civ. P. 65(c) .......................................................................................... i, 18

FRCP 20(a) ............................................................................................................. 12

**Regulations**

8 C.F.R. § 214.1(d) ................................................................................................. 7

8 C.F.R. § 214.2(f) ................................................................................................. 7

8 C.F.R. § 214.2(f)(16) .......................................................................................... 6

8 C.F.R. § 1003.1(b) .............................................................................................. 6

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION**

## I.    INTRODUCTION

Sixteen Plaintiffs—all unidentified current or former international students in the United States with a variety of criminal histories—complain that their information within a federal government database of international students at U.S. colleges and universities was arbitrarily terminated. Through their *ex parte* application, Plaintiffs asks this Court for an emergency order to reinstate each of their records in that database, the Student Exchange Visitor Information System ("SEVIS"). But Plaintiffs' *ex parte* application also asks the Court to issue a broad variety of anomalous additional relief, however, including (1) enjoining Defendants from arresting or detaining **all Plaintiffs** on any grounds, essentially immunizing him from any immigration law enforcement; (2) authorizing **all Plaintiffs** to proceed anonymously in this lawsuit; and (3) to prevent disclosure of **all Plaintiffs**' identifying information to the Defendant federal agencies that Plaintiff is suing. *See* Dkt. 5 ("App."). The wide-ranging, extraordinary relief that Plaintiffs seek by *ex parte* application is improper and unsupported by the evidence and the law.

Insofar as the Plaintiffs have provided any information about each of their situations here, it is significantly different than most other cases now being litigated regarding SEVIS records. **First,** the sixteen unrelated Plaintiffs and they fail to show that they can proceed as a mass action. **Second,** since Plaintiffs are all anonymous, none of the underlying details of their claims can be ascertained or tested. **Third,** Plaintiffs' Complaint concedes they are not challenging the revocation of their visa, which renders them subject to removal proceedings irrespective of their SEVIS record.

As for the likelihood of success prong, Plaintiffs have not submitted evidence sufficient to show a likelihood that the termination of their SEVIS records was arbitrary or capricious. Instead, by proceeding under strict anonymity, they both prevent any of that evidence from being brought into the record Indeed, each of the Plaintiffs affirmatively alleges that they are "unaware of the factual basis for the termination of

1

their SEVIS status." *See* Compl., ¶¶ 52-133. As submitted by their *ex parte* application, essentially no actual evidence is presented to establish the merits of Plaintiffs' claims that the Defendants acted arbitrarily and capriciously. That is not enough to carry their heavy burden for obtaining mandatory injunctive relief on an *ex parte* basis.

As for the irreparable harm prong, Plaintiffs likewise submit no evidence sufficient to support the incredibly wide-ranging relief their application seeks. Plaintiffs range from current to former students as well as individuals in optional practical training. Moreover, Plaintiffs do not submit any evidence that their colleges, universities, or employers have stopped them, or has threatened to stop them, from continuing school or OPT.

Insofar as Plaintiffs' lawsuit asks this Court to enjoin the government from arresting or detaining them, Plaintiffs improperly seek relief that they could not obtain even if they ultimately prevailed on the merits of their claims.

As their ostensible basis for seeking extraordinary injunctive relief beyond restoring their SEVIS records, Plaintiffs cite completely non-applicable cases in which aliens have been arrested and detained under Section 237(a)(4)(c) of the Immigration and Nationality Act—which authorizes the Secretary of State to determine that an individual is "deportable" if they have "reasonable grounds" to believe the individual would adversely affect U.S. foreign policy. Plaintiffs' Application, however, identifies no such foreign policy issues here, nor any political speech. Nor have Plaintiffs sued the Department of State or its Secretary as defendants. Plaintiffs cannot obtain by false analogy types of relief that their claims do not provide.

Plaintiffs also asks the Court to authorize them to proceed under a pseudonym. But the Defendants' interest in being able to fully defend against their anonymous accusers' allegations, and the public's interest in litigation information, outweigh the Plaintiffs' desires to proceed in total anonymity. Indeed, many SEVIS record cases are being litigated around the country, almost none using or needing anonymous plaintiffs, and with no retaliation resulting.

2

Accordingly, Plaintiffs' *ex parte* application should be denied.

## II.    PLAINTIFFS' COLLECTIVE CLAIMS

Plaintiffs allege they are current or former international students in the United States. *See* Dkt. 6-1, Ex. A-P, Declarations of Student Does #4-19; each at ¶ 1. They have collectively engaged in a variety of criminal activities, including domestic violence and battery, driving under the influence, shoplifting, and driving citations, that resulted in arrests, convictions, and/or probation. *See generally Id*. Some Plaintiffs were also cited for driving infraction(s). Compl. ¶¶ 48-130.

Some Plaintiffs allege that they are engaged in post-graduate Optional Practical Training (OPT). OPT is a short-term program that provides up to 12 months of extended stay in the United States—it is essentially a brief extension of the F-1 nonimmigrant program to allow for added technical training. 8 C.F.R. §§ 214.2(f)(10)-274a.12(c)(3).

Other Plaintiffs allege they were enrolled in undergraduate studies, at unidentified colleges and universities across the Central District of California. *See id*. Further Plaintiffs allege they were enrolled in graduate level studies, at unidentified colleges and universities across the Central District of California. *See id*.

Plaintiffs alleges that they have been notified that their SEVIS records were terminated. Compl. ¶¶ 48-133.

Notably, Plaintiffs, "…do not challenge the revocation of their visa in this action." Compl. ¶ 6. The Plaintiffs thus do not contest the underlying revocation of their rights to stay in the United States—just the deletion of their SEVIS records.

Each of the 16 Plaintiffs states in their declarations that they have individually "not engaged in any significant political activity." Compl. ¶¶ 51, 57, 63, 68, 73, 78, 83, 89, 94, 99, 105, 110, 115, 120, 125, 132.

Defendants cannot verify or test these allegations, or identify any additional information bearing on the merits of the 16 Plaintiffs' claims, because Plaintiffs have refused to provide any identifying information.

## III. PROCEDURAL HISTORY

On April 21, 2025, Plaintiffs filed their Complaint, asserting APA claims and a Due Process claim challenging the termination of Plaintiffs' SEVIS records SEVIS records. Compl. ¶¶ 43-143. Plaintiffs seek declaratory and injunctive relief declaring that the termination of their SEVIS records was unlawful, vacating ICE's termination of the "SEVIS status," and ordering Defendants to restore the "SEVIS record and status." Compl., *Prayer for Relief*.

The Complaint does not seek to enjoin Defendants from taking any enforcement action arising from Plaintiffs' criminal history or SEVIS status, nor does it allege facts that would substantiate such extraordinary relief. *See id*. The Complaint similarly does not challenge the revocation of each of the 16 Plaintiffs' visas. *See id*., ¶ 6.

## IV. ARGUMENT

### A. Plaintiff Fails to Establish Entitlement to Extraordinary *Ex Parte* Relief

When a party applies for the extraordinary remedy of *ex parte* relief, it must demonstrate it "is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

**First,** Plaintiff fails to satisfy the *Mission Power* standard for seeking emergency relief by *ex parte* application, as opposed to proceeding by a noticed motion.

**Second,** Plaintiffs have not shown good cause. Plaintiffs argue that TROs have been recently granted by courts in other SEVIS cases. The Declaration of Stacy Tolchin asserts that "Attached as **Exhibit R** are thirteen (13) district court orders, listed below, from the past week and a half granting temporary restraining orders in challenges substantially identical to Plaintiff's challenge in this matter." Tolchin Decl. ¶ 21 [Dkt. 5-1, at p. 4-5]. Yet Plaintiff neither explains nor establishes why their own alleged facts are "substantially identical." To the contrary, as discussed above, there are multiple significant differences with Plaintiffs' case, starting with the anomalous fact that the Defendants here have no opportunity to rebut the Plaintiffs' assertions because Plaintiffs'

identities are unknown.

Contrary to what Plaintiff argues, other district courts have *denied* TROs sought in other SEVIS reinstatement cases. *See* Farrell Decl. Ex. 1 (Order Denying TRO in *Deore, et al. v. Sec'y of U.S. Dep't of Homeland Sec., et al.*, 2:25-cv-11038-SJM-DRG, Dkt. 20 (E.D. Mich. Apr. 17, 2025)). As the court in *Deore* found, SEVIS reinstatement cases are fact-intensive and fact-determinative, which requires development of the evidentiary record.

**Third,** Plaintiffs have not shown any prejudice they would suffer from proceeding with a normal 28-day noticed motion for a preliminary injunction. Indeed, while Plaintiffs vaguely allude to a potential future arrest and detention if they have no visa, Plaintiffs' Complaint disavows challenging the revocation of their visas. *See* Compl., ¶ 6.

Accordingly, Plaintiff's Application fails to establish entitlement to *ex parte* relief.

## B.    Plaintiffs' *Ex Parte* Application Fails to Establish Entitlement to Their Requested TRO Relief

The standard for issuing a TRO is substantially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id*. at 20. These factors are mandatory.

Because Plaintiff seeks a mandatory injunction here, the already high standard for granting a TRO is "doubly demanding." *Garcia v. Google, Inc.* 786 F.3d 733, 740 (9th Cir. 2015). Thus, Plaintiff must establish that the law and facts *clearly favor* their

position, not simply that he is likely to succeed. *Id.* Further, a mandatory preliminary injunction will not issue unless extreme or very serious damage will otherwise result. *See Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022).

> 1. <u>Plaintiffs Have Not Established a Likelihood of Success on the Merits</u>

> (a) Plaintiffs' APA Claim is Defective

Plaintiffs' *ex parte* application fails to demonstrate a likelihood of success on the merits on their APA claim because Plaintiff does not challenge final agency action, the agency action that they challenge was not arbitrary or capricious.

**No final agency action.** Plaintiff fails to challenge final agency action. *See* 5 U.S.C. § 704. Agency action is final for purposes of APA review only if (1) it marks "the consummation of the agency's decision-making process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).

Here, the termination of SEVIS records cannot reasonably be viewed as a "consummation" of agency decision making. Plaintiffs have administrative remedies available to inquire about the termination of Plaintiffs' SEVIS records and if necessary, seek correction or reinstatement. 8 C.F.R. § 214.2(f)(16). But Plaintiffs have chosen not to avail themself of those remedies.

With respect to Plaintiffs being potentially subject to future removal proceedings, *a fortiori* there is no final agency action to review here. If Plaintiffs were to be placed into immigration proceedings via a Notice to Appear, they couldan contest them before an Immigration Judge. 8 U.S.C. §§ 1229(a)(1); 1229a. Plaintiffs could then administratively appeal the Immigration Judge's decision to the Board of Immigration Appeals, *see* 8 C.F.R. § 1003.1(b), and ultimately get judicial review with the Ninth Circuit. 8 U.S.C. § 1252(a)(1). No such theoretical proceedings are before the Court, nor would there be jurisdiction over them.

**Not arbitrary or capricious.** Under the APA, a court may set aside final agency

action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Under the arbitrary or capricious standard, the party challenging the agency's action must show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 389 (6th Cir. 2002) (quotations omitted). "The arbitrary or capricious standard is the least demanding review of an administrative action." *Id.*

Plaintiffs fails to carry their burden to establish that DHS's action of terminating Plaintiffs' SEVIS records was arbitrary or capricious. The Complaint affirmatively contends that Plaintiffs do not know why their SEVIS records were terminated. SEVIS records may be terminated for numerous different reasons by DHS or by a university. A criminal history, which Plaintiffs acknowledges they have, is one valid reason for terminating a SEVIS record. Compl. ¶¶ 34-35. Their self-serving assertions fall far short of carrying their burden of affirmatively demonstrating that the agency *made a decision that was arbitrary and capricious*. APA claims are not decided based on a Plaintiffs' own self-serving narratives about what happened.

Plaintiffs' argument that 8 C.F.R. § 214.1(d) limits DHS's ability to update SEVIS is defective. The plain text of a regulation controls its application. *See League of Cal. Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1015 (9th Cir. 2024). Section 214.1(d) lists three events that "shall" terminate an individual's nonimmigrant status. *See* 8 C.F.R. § 214.1(d). The text does not refer to the SEVIS system; it addresses the actual underlying status. But even if it did, the regulation does not indicate that those mandatory events are the *only* reasons to terminate a nonimmigrant's status. *See id.* Instead, the regulation provides specific reasons requiring the termination of nonimmigrant status in addition to reasons provided elsewhere in the U.S. Code and the Code of Federal Regulations. *See, e.g.*, 8 U.S.C. § 1201(i); 8 C.F.R. § 214.2(f).

Second, the authority Plaintiff cites for their interpretation of § 214.1(d) is deficient. Plaintiffs' only support is footnote 100 in *Jie Fang. See Jie Fang*, 935 F.3d at

7

185 n.100. The Third Circuit there mused about whether § 214.1(d) limited DHS's ability to terminate F-1 nonimmigrant status. *See id.* (stating only that it "appears" so). However, the court qualified that because the issue was not before it on appeal, and no party had even mentioned § 214.1(d) in any of their briefs. *See* Appellant's Brief, *Jie Fang v. Homan*, 2018 WL 1790605; Appellee's Brief, 2018 WL 2234265, Appellant's Reply Brief, 2018 WL 2725628. Accordingly, this footnote dicta should be disregarded.

### (b) Plaintiffs' Due Process Claim is Defective

Plaintiff also asserts a claim for violation of the Due Process Clause of the Fifth Amendment. *See* Compl., ¶¶ 44-47. Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience' or interferes with the rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection. *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Plaintiff does not have a constitutionally protected entitlement in their SEVIS record that could give rise to a due process claim, as several courts have ruled. *See Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (denying preliminary injunction and finding that plaintiff had no due process right to or property interest in his SEVIS status and that a change to his SEVIS status did not engender due process protections); *Bakhtiari v. Beyer*, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a congressional intent to confer a benefit on nonimmigrant students); *Doe 1 v. U.S. Dep't of Homeland Sec.*, 2020 WL 6826200, at *4 n.3 (C.D. Cal. Nov. 20, 2020), aff'd sub nom. *Does 1 through 16 v. U.S. DHS*, 843 F. App'x 849 (9th Cir. 2021) ("Although Plaintiffs do not allege in the Complaint or Motion a property interest in their SEVIS status, it is equally unlikely that one exists."); *Fan v. Brewer*, 2009 WL 1743824, at *8 (S.D. Tex. June 17, 2009) (updating student's

8

SEVIS record to reflect changed academic status did not violate any constitutional right); Similarly, "[t]here is no constitutionally protected interest in either obtaining or continuing to possess a visa." *See also Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (collecting cases).

Plaintiff also argues their due process rights were violated because Plaintiff should have been given notice and an opportunity to be heard before DHS terminated Plaintiff in the SEVIS database. Even if Plaintiff were entitled to due process as to the SEVIS record termination, Plaintiff could obtain it through the administrative process that Plaintiffs have chosen not to pursue. *See, e.g., Calderon Salinas v. U.S. Atty. Gen.*, 140 F. App'x 868, 870 (11th Cir. 2005) (indicating that aliens were provided due process in removal proceedings because "[t]hey were given notice and opportunity to be heard in their removal proceedings[.]"); *Rosen v. NLRB*, 1983 WL 21389, at *3 (D.D.C. Jan. 27, 1983) ("Plaintiffs are not entitled to the process they would prefer."); *Flagship Lake Cty. Dev. No. 5, Ltd. Liab. Co. v. City of Mascotte*, 2013 WL 1774944, at *3 (M.D. Fla. Apr. 25, 2013) (remedy "may not have been the preferred remedy" but was "more than adequate").

Accordingly, Plaintiff does not have an actionable due process claim.

### 2.    Plaintiffs Fail to Establish Likely Irreparable Injury

Plaintiff fails to carry their burden of submitting evidence sufficient to show they will suffer irreparable harm if their requested relief is not granted. To satisfy this factor, Plaintiff must demonstrate "a particularized, irreparable harm beyond mere removal." *Nken v. Holder*, 556 U.S. 418, 438 (2009) (Kennedy, J., concurring). Notably, a "possibility" of irreparable harm is insufficient; irreparable harm must be likely absent an injunction. *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *see also Winter*, 555 U.S. at 22 ("a possibility of irreparable harm" does not justify a preliminary injunction).

Here, Plaintiffs contend that they are unable to complete their studies in school, or to receive further Optional Practical Training (OPT), and that this constitutes irreparable

harm. But that is not the case. While Plaintiff's Complaint is completely unclear about any of the specifics of the Plaintiffs' education, their Doe Declarations [Dkt 5-1] provide some added details.

With respect to OPT, as its name suggests, OPT is simply added *training* that is *optional* and *practical*. It is not a degree program, culminating in a specific school granting a particular degree or certification. As discussed above, OPT is a short-term program that provides up to 12 months of extended stay in the United States—it is essentially a brief extension of the F-1 nonimmigrant program to allow for some added technical training. And nothing precludes Plaintiffs from completing further on-the-job training in their home country or in another country. Wanting to do further training at a preferred employer is not an irreparable harm; indeed, OPT terms are narrowly limited in their duration by design. Furthermore, Plaintiffs do not appear to establish that they cannot continue in OPT anyways as a result of the SEVIS termination, i.e. they do not demonstrate that their OPT employers have required them to stop.

With respect to continued studies, while the anonymous Plaintiffs that are in school contend they face an inability to obtain their degree, it is not clear that the unidentified schools are not letting them pursue their studies. The Doe declarations do not appear to assert that. Accordingly, they do not face imminent discontinuation of their studies. To the extent they assert they may be subject to deportation, again Plaintiffs' lawsuit does not challenge the revocation of their visas, which is not done by ICE in SEVIS, but rather is done by the State Department—which is not a defendant in this lawsuit. And even if some of these Plaintiffs were ultimately deported following removal proceedings, they would presumably continue to retain their school credits and could continue their education, albeit not at their preferred school.

Additionally, Plaintiffs appear to complain that their SEVIS record negatively impacts how they are pereceived However, Plaintiffs fails to explain how somebody would access this protected record system record to harm them.

Plaintiffs also argue that their SEVIS termination puts them in financial jeopardy. But "[p]urely monetary injuries are not normally considered irreparable." *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984).

Likewise, Plaintiffs' assertion that they are concerned about retaliation does not establish irreparable harm in a completely different type of case. The plaintiffs in many other SEVIS cases proceeding around the country are not anonymous. There is no evidence they have been retaliated against.

Finally, as for Plaintiffs' extraordinary request for the Court to grant him broad immunity from immigration detention or arrest—relief that even Plaintiffs' Complaint does not request—Plaintiffs (1) do not establish that they will be detained in the absence of injunctive relief; (2) do not establish that such detention would be unlawful; (3) do not establish how the Court would have jurisdiction over such removal proceedings; and (4) do not establish that such speculative future proceedings would inflict irreparable harm on them.

In sum, Plaintiffs' speculative allegations of irreparable harm, without more, fall far short of establishing, with admissible evidence submitted via their moving papers, the required likelihood of irreparable future harm. *See, e.g., Winter*, 555 U.S. at 22.

### 3. Public Interest Factors Weigh in Favor of the Government

The public interest factor does not weigh in Plaintiffs' favor. Even where the government is the opposing party, courts "cannot simply assume that ordinarily, the balance of hardships will weigh heavily in the applicant's favor." *Nken*, 556 U.S. at 436 (citation and internal quotation marks omitted).

Insofar as Plaintiff seeks a broad variety of disparate relief by their TRO, their requests involve different levels of public interest. Restoration of the SEVIS record has been ordered as TRO relief in some cases, as discussed above. By contrast, Plaintiffs' request to be granted far-reaching immunity from any immigration enforcement would be a significant public harm, in addition to being contrary to law. "Control over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Office of*

*Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant.").

**C.    Plaintiffs' Mass Action Is an Improper Joinder of Parties**

because the Complaint Student improperly joines sixteen anonymous Plaintiffs, each challenging their own separate SEVIS record termination. Plaintiffs fail to show why they can proceed as a collective mass action. FRCP 20(a) permits the joinder of plaintiffs in one action if: (1) the plaintiffs assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there are common questions of law or fact.

In *Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997), 49 plaintiffs improperly filed a complaint requesting the court to compel the adjudication of forty-nine pending immigration applications. *Coughlin,* at 1349. The *Coughlin* alleged that mandamus relief was appropriate because the defendants unreasonably delayed adjudicating plaintiffs' applications. *Id*. The Ninth Circuit held that the interests of justice required severance and the dismissal of erroneous plaintiffs because "…the mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact." *Id.* at 1351. Even if the case could proceed as is, the court would still have to give each claim "individualized attention." *Id*.

Here, like *Coughlin*, all Plaintiffs challenge their own immigration status of the termination of their information in the SEVIS record database. All Plaintiffs have different circumstances of their educational and work status, prior to their SEVIS termination. *See, e.g.*, Compl. ¶ 9, 15 (Student Does # 4 and 10 were enrolled in OPT in Orange County); ¶ 10 (Student Doe # 5 was enrolled in OPT and lives outside of the District in San Diego); ¶¶ 11, 14, 17 (Student Does # 6 and 9 and 12 are undergraduate students in Los Angeles); ¶¶ 7-8, 22 (Student Does # 7-8 and 17 are graduate students in Los Angles); ¶ 18 (Student Doe # 13 was enrolled in OPT in Los Angeles County); ¶¶ 19, 21, 23-24 (Student Does # 14, 16, 18, and 19 were graduate students in Orange

12

County); ¶ 20 (Student Doe # 15 was a undergraduate student in the Inland Empire). Each of these circumstances, could have an affect on the basis for the SEVIS termination.

Further, all Plaintiffs have their own individual criminal history. *See, e.g.*, Tolchin Decl. at 44 ¶ 4 (Student Doe # 11 was arrested for shoplifting); 49 ¶ 4; 81 ¶ 4 (Student Does # 12 and 19 were convicted for driving under the influence); 53 ¶ 4 (Student Doe # 13 was charged with driving without a license); 25 ¶ 4; 30 ¶ 4; 58 ¶ 4; 62 ¶ 4; 67 ¶ 4; 71 ¶ 4 (Student Does # 7-8, 14-17 were charged and or arrested for domestic violence and or battery); 10 ¶ 4 (Student Doe # 4 was "arrested" for an unspecific crime); 16 ¶ 4 (Student Doe # 5 pleaded no contest to for driving under the influence and Student Doe # 6 was arrested for driving under the influence). And all Plaintiffs had different sought relief if the reinstatement of the SEVIS records is ultimately determined. "Factual disparities of the magnitude alleged . . . too great to support permissive joinder." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013).

Therefore, the Court should find that Plaintiffs' claims are not sufficiently related to constitute the same transaction or occurrence. *See, Coughlin*, 130 F.3d at 1350; *Visendi*, 733 F.3d at 870. Because this mass action is an improper joinder of parties, *ex parte* mass relief is not warranted.

**D.    The Broad Variety of Relief that Plaintiff Seeks by *Ex Parte* TRO Application Is Unjustified, and Far Exceeds the Relief Requested or Obtainable by Plaintiffs' Complaint**

Plaintiffs fail to establish entitlement to the extraordinarily overbroad mandatory injunctive relief that they request by TRO application at the very outset of this case, which seeks the ultimate relief that their Complaint requests and much more. *Marlyn Nutraceuticals v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 878 (9th Cir. 2009); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits").

13

Plaintiffs' *ex parte* application does not just seek to order Plaintiffs' SEVIS record temporarily restored—akin to the relief that Judge Valenzuela recently ordered by TRO issued in *Zhou v. Lyons*. Judge Valenzuela there ordered as follows: "The Government's decision to terminate Plaintiffs' F-1 student status in SEVIS is hereby set aside pending further order from the Court. The Government is enjoined from terminating Plaintiffs' F-1 status in SEVIS pending further order from the Court." *Zhou v. Lyons*, No. 2:25-cv-02994-CV-SK, Apr. 15, 2025 order (found at Tolchin Decl., Ex. R).

But that is not what Plaintiffs ask this Court for. *See* Dkt. 5-2 (Proposed Order). Plaintiffs seeks a TRO that does not just restore their SEVIS records temporarily (like Judge Valenzuela's order), but rather purports to vaguely prohibit "any legal effect" of the termination. Plaintiffs' broad requests are not workable on a TRO. Further, Plaintiffs vaguely refer to ordering that the termination not have "any effect on Plaintiffs' alleged removability," but does not explain what that consists of. *Id*. There are strict jurisdictional limits on the judicial review of removability proceedings. Plaintiffs cannot obtain abstract and vague injunctive relief that would potentially interfere with such potential future proceedings.

Plaintiffs similarly asks the Court to issue a TRO order providing that "Defendants are prohibited from directly or indirectly, by any means whatsoever, implementing, enforcing, or otherwise taking action as a result of their decision to terminate Plaintiffs' SEVIS record." *Id*. This language is far too broad and indeterminate even if the Court were to agree that the SEVIS record should be restored. For example, read literally this would preclude the Defendants from restoring Plaintiffs' SEVIS records, since that would be action taken "as a result of" the prior decision to terminate the record. Likewise, for the Defendants to file pleadings in a lawsuit could be claimed to be such prohibited "action." Requesting the restoration of the SEVIS records is one thing, but vaguely precluding any conceivable action relating to the termination is hugely overbroad, and completely untethered to Plaintiffs' Complaint.

Most egregiously, Plaintiffs request that the TRO provide that "Defendants are

14

enjoined from arresting and detaining Plaintiff or transferring Plaintiff outside the jurisdiction of this District." *Id*. The request is unrelated to SEVIS. Plaintiffs appears to be likening themself to the completely different line of cases in which students have been arrested, by State Department action, for speaking about foreign policy issues.

Providing this extraordinary relief would bar immigration detention, on any ground, for the unidentified Plaintiffs. There is neither any basis for such an order nor any jurisdiction for it. In aggravation, Plaintiffs' Complaint disavows challenging the revocation of their visas. They thus do not contest whether they could be removed on that basis, pursuant to normal removal process. In seeking for the District Court to bar any arrest or detention—in falsely analogizing themselves to the foreign policy political speech cases—Plaintiffs seeks by TRO what they could not get even if they ultimately prevailed on their Complaint's actual claims.

Moreover, even if Plaintiffs are served with an NTA, they will then have the normal protections attendant to that process.. There is no basis for issuing Plaintiffs a special exemption from immigration law *now*.

Plaintiffs' reliance on a TRO issued in *Chung v. Trump*, No. 25-cv-2412 (S.D.N.Y. Marc. 25, 2025) is completely inapposite. In that case, an administrative warrant for Plaintiffs' arrest had been issued based on alleged foreign policy harm. *See Chung v. Trump*, No. 25-cv-2412 at Dkt. 8 at 7 (plaintiff's memorandum describing arrest warrant).. Thus, the relief Plaintiffs seek is inappropriate and should be denied.

**E.    Plaintiffs Have Not Satisfied Their Burden to Proceed Anonymously**

Plaintiffs have not satisfied their burden to proceed anonymously The public's interest in open courts, and the government's need for information to defend itself, greatly outweighs any baseless concerns of retaliation premised on the unrelated and inapposite news articles that Plaintiff cites. The mere fact of filing an immigration lawsuit does not justify the extraordinary remedy of depriving the Defendants and the public of knowing who the Plaintiff even is.

As an initial matter, Plaintiffs' personally identifiable information in this

15

immigration case is already protected from public disclosure by Fed. R. Civ. P. 5.2(c) and C.D. Cal. L.R. 5.2-1. Moreover, public access to the docket in this immigration case is already restricted. Further restriction is not required.

Fed. R. Civ. P. 10(a) states that "[t]he title of the complaint must name all the parties." Additionally, the Central District's Local Rules require parties to list, on the first page of all documents, the "names of the parties." L.R. 11-3.8(d). This rule embodies the presumption of openness in judicial proceedings. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979). The use of a fictitious name in litigation "runs afoul of the public's common law right of access to judicial proceedings." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).

In the Ninth Circuit, "the common law rights of access to the courts and judicial records are not taken lightly." *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (cleaned up). Thus, parties may only use pseudonyms in the "unusual case," when "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile*, 214 F.3d at 1067-68. *See Doe v. Pasadena Unified Sch. Dist.*, 2018 WL 6137586, at *2 (C.D. Cal. Feb. 20, 2018) (ordering plaintiffs to show cause in writing why the complaint should not be dismissed for failure to identify the Doe plaintiff) (citing *Doe v. Rostker*, 89 F.R.D. 158, 163 (N.D. Cal. 1981) ("This court has both the duty and the right to ensure compliance with the Federal Rules and to take action necessary to achieve the orderly and expeditious disposition of cases.")).

Where, as here, the use of a pseudonym is sought to ostensibly protect the complainant from retaliation, the district court is to determine the need for anonymity under the following factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears; (3) the anonymous party's vulnerability to such retaliation; (4) the prejudice to the opposing party, and (5) the public interest. *Id.* at 1068; *see also Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). The Court has discretion to permit anonymity only if "the party's

need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* Thus, the Court should "determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Id.*

Plaintiffs cite news articles concerning specialized arrests and detentions based on Department of State Decisions relating to activist student political activity. But Plaintiffs allege they are not involved in any similar political activity. *See* Compl. ¶¶ 51-132. The cited news articles have no reference to SEVIS record termination – the issue giving rise to Plaintiffs' complaint. App. at 16-18, fn. 8-17. While Plaintiffs claims that these news articles have caused Plaintiffs to experience a generalized fear of retaliation, that feat is not connected to this case. *Id.*

By contrast, the prejudice to the Defendants in not knowing the circumstances over which they are being sued in connection with an emergency injunction hearing is extremely serious. Plaintiffs now collectively asks the Court to issue extraordinary injunctive relief against the Defendants based on such conclusory assertions made by anonymous declarants—regardless of the actual facts of Plaintiffs' circumstances.

Requiring the Defendants to defend legal claims against an anonymous and hidden accuser is an extreme measure that is not justified here, and which has neither been used nor been found necessary in the many other SEVIS termination cases around the country. Furthermore, the public has an interest in knowing the identity of litigants.

For the same reasons, Plaintiffs' request for an unspecified protective order restricting the sharing of information about Plaintiffs' identity and "personal information" should be denied. Plaintiff claims that "the details of Plaintiffs' specific situation are of limited relevance." App. 21:23-25 ("the individual identity of Plaintiffs are not necessary to facilitate the public's understanding of judicial decision-making…"). But According to Plaintiffs' complaint, it was arbitrary and capricious for ICE to terminate Plaintiffs' SEVIS records because of their criminal history—Plaintiff contends that ICE, looking at that criminal history, could not have acted reasonably in

terminating their SEVIS status. Compl., ¶ 42. Plaintiffs do not apparently argue that *no criminal history* could ever justify SEVIS termination. Rather Plaintiffs insists that their own criminal histories cannot warrant SEVIS termination, because it is—according to Plaintiffs' anonymous declarations—so minor. But an APA claim alleging "arbitrary and capricious" action by a federal agency is decided based upon the agency's decision. It is akin to appellate review of a District Court decision. It is not based on the Plaintiffs' own after-the-fact averments about why their criminal record is putatively not serious.

Moreover, the "sample" protective orders attached to the Tolchin Declaration support Defendants' position. *See* Tolchin Decl. Ex. W-X. The plaintiffs who were seeking relief in both cases were expressly named in the case caption of the complaint that initiated those lawsuits. *Id.* Specifically, *Osny Sort-Vasquez-Kidd* was the named plaintiff in the first case, and *Ernesto Torres* was the named plaintiff in the second case. *Id.* Contrary to the suggestions of Plaintiffs' counsel, their pursuit of anonymity here is completely inconsistent with normal practice.

The government's need for information to defend itself, and the public's need for basic information about civil lawsuits, greatly outweighs Plaintiffs' collective unfounded fear of retaliation based on news articles addressing foreign policy political activity that is not at issue, and a special statutory provision that is not at issue here. Accordingly, the Court should deny Plaintiffs' request.

## F.    A Bond Is Required Under Fed. R. Civ. P. 65(c)

If the Court decides to grant relief, it should order a bond pursuant to Fed. R. Civ. P. 65(c), which states "The court may issue a preliminary injunction or a temporary restraining order *only if the movant gives security* in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). Here, because Plaintiffs admits they have no valid visas (Compl. ¶ 6), the amount of any bond should be akin to an appearance bond.

## V.    CONCLUSION

The Court should deny Plaintiffs' *ex parte* Application.


Dated: April 24, 2025             Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/ Alexander L. Farrell*
PAUL (BART) GREEN
ALEXANDER L. FARRELL
Assistant United States Attorneys

Attorneys for Defendants


Certificate of Compliance with L.R. 11-6.2

The undersigned, counsel of record for the Defendants, certifies that this Opposition Brief contains 6,231 words, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order.


Dated:  April 24, 2025             */s/ Alexander L. Farrell*
ALEXANDER L. FARRELL

19